Christine Anderson Ferraris, AZ Bar 031414
A. FERRARIS LAW, PLLC
333 N. Wilmot Rd., Suite 340
Tucson, Arizona 85711
Tel. (520) 268-1289
cferraris@aferrarislaw.com

Susan M. Rotkis, AZ Bar 032866
CONSUMER LITIGATION ASSOCIATES WEST, PLLC
382 S. Convent
Tucson, Arizona 85716
Tel. (520) 622-2481
srotkis@clalegal.com

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| LINNEA M. GASHI-DOBERDOLI, | CASE NO. 4:18CV483 |
| Plaintiff, | |
| v. | |
| DT Automotive Center, Inc. d/b/a Desert Toyota of Tucson; et al., | Joint Report of Fed. R. Civ. P. 26(f) Conference |
| Defendants. | |

On December 28, 2018, counsel for the Parties to this action met and conferred by telephone in accordance with Fed. R. Civ. P. 26(f) the Court's Order

of November 27, 2018.  (ECF 35).  The following attorneys participated in the conference:

- Susan M. Rotkis, on behalf of Linnea Gashi-Doberdoli

- Christine Anderson Ferraris, on behalf of Linnea Gashi-Doberdoli

- J. Neil Stuart, on behalf of TransUnion, LLC (TransUnion)

- Jennifer Jiang, on behalf of Experian Information Solutions, Inc. (Experian)

- Christopher Heo, on behalf of DT Automotive Center Inc. (Desert Toyota)

- Andrew Lishko, on behalf of TruWest Credit Union (TruWest)

- Benjamin Branson, on behalf of America First Credit Union (America First)

- David L. O'Daniel, on behalf of Tucson Federal Credit Union (Tucson Federal)

The Parties discussed the following matters and propose a plan for litigation of this matter:

**1.  The nature of the case and relief sought:**

**Plaintiff's statement of the case:**  Linnea Gashi-Doberdoli has sued Desert Toyota, three credit unions, and two of the "Big 3" credit reporting agencies for intentional violations of the federal and state consumer protection statutes, including the Fair Credit Reporting Act, 15 U.S.C. 1681, *et sequi.*,

(FCRA) the Equal Credit Opportunity Act, 15 U.S.C. 1691, *et sequi.*, (ECOA), the Arizona Consumer Fraud Act.

Ms. Doberdoli asserts three legal theories against Desert Toyota, TruWest Credit Union, America First Credit Union, Tucson Federal Credit Union to challenge Defendants' failures to provide Ms. Doberdoli with the mandatory adverse action notices required by Equal Credit Opportunity Act (ECOA), 15 U.S.C. §1691 (d), and the Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681 et seq. Defendants Experian Information Solutions, Inc.; Transunion, LLC, sold Ms. Doberdoli's consumer reports to third parties without reasonable procedures in place to ensure the third party's use was proper and lawful thereby violating  FCRA, 15 U.S.C. § 1681e(a). Ms. Doberdoli's third claim made is against Desert Toyota for its employees' deceptive conduct violating the Arizona Consumer Fraud Act during and after the sale and finance of a 2007 Toyota Tundra to Ms. Doberdoli.

This case centers around Ms. Doberdoli's 2007 Toyota Tundra purchase and dealer-arranged financing fraught with deceit. This case is born of a deal where on December 5, 2017, Ms. Gashi-Doberdoli and dealer Desert Toyota of Tucson agreed to terms to purchase and consummated the deal with a signed contract. Days later, Ms. Doberdoli returned to the dealership for repairs, Desert Toyota employees informed her the deal did not "go through." Lied to

and coerced, Ms. Doberdoli was forced to pay another $1000 and sign a second, back-dated finance contract with a higher interest rate.

Later, Ms. Doberdoli learned from TruWest that Desert Toyota had submitted a credit application even though Ms. Doberdoli had never authorized, completed nor signed a credit application. The credit application has false information and has a signature that purports to be hers.  For example, such false information, among other things, represented that she was married and received income from a spouse.

In addition to forging Ms. Doberdoli's signature, Desert Toyota employees employed sex and marital-status discrimination to steer Ms. Doberdoli into a loan to best benefit Desert Toyota, to Ms. Doberdoli's detriment. TruWest Credit Union was informed of the fraud, yet it took no action.

Ms. Doberdoli learned Desert Toyota did not submit her credit information to Hughes Credit Union, which she expected would provide a favorable loan.  Her credit reports show no inquiry from Hughes, but do, however, show inquiries on December 8, 2017 (December 5, 2018 is date of Desert Toyota Sales and both retail installment contracts), by America First Credit Union and TruWest Credit Union, and on December 5, 2018 hard inquiries by 700 Credit/Desert Toyota and Tucson Federal Credit Union.  For

Ms. Doberdoli the transaction with Desert Toyota was a sham predicated upon Desert Toyota's intentionally making up false and discriminatory data and using unfair, deceitful, and coercive antics. In effect, Ms. Doberdoli's rights remain violated to this day because she has never received an ECOA- or FCRA-compliant adverse action notice when defendants Desert Toyota, America First Credit Union, Tucson Federal Credit Union and TruWest Credit Union finance took adverse action in response to an application for credit on behalf of Ms. Doberdoli from Desert Toyota.

Defendants Experian and TransUnion willfully violated the FCRA, 15 U.S.C. § 1681e(a) by selling Ms. Doberdoli's consumer report to co-defendants, and likely other third parties, without a permissible purpose to do so. They had no reason to assume that the creditors in this transaction had a permissible purpose to obtain the Plaintiff's consumer reports because they had no procedures in place to trust that the consumer report was for a proper use and for a lawful purpose. These violations were willful and/or in reckless disregard of the Plaintiff's rights.

The FCRA provides for statutory and punitive damages for willful violations of the FCRA, along with attorneys' fees and costs. 15 U.S.C. § 1681n. The Plaintiff is seeking such damages in this case.   Each Defendant has been on

notice of such problems for over ten years, having received a plethora of consumer disputes, agency complaints, enforcement actions, and lawsuits.

In addition, Plaintiff can show that she is entitled to actual damages that she suffered in the form of non-economic damages such as emotional distress and inconvenience, and damage to her creditworthiness and her ability to obtain credit.  She can prove her entitlement to actual damages for willful or negligent violations of the FCRA.  15 U.S.C. §§ 1681n & 1681o; *Safeco Inc. Co. of Am. v. Burr*, 551 U.S. 47 (2007).  She will also seek her attorneys' fees and costs. 15 U.S.C. §§ 1681n & 1681o.

**Experian's statement of the case:**

As discovery has not yet commenced, Experian cannot provide the Court with a complete factual background of the case as it relates specifically to Plaintiff.  Thus, Experian submits this statement based on the facts known to it at this time without waiving any defense and reserves the right to supplement this statement once discovery progresses and additional facts are developed. Experian can, however, state the following:  In this suit, Plaintiff claims that Experian violated the Fair Credit Reporting Act, 15 U.S.C. § 1681e(a) by "selling the Plaintiff's consumer report to third parties without reasonable procedures in place to assume that it was for a proper use and for a lawful purpose."  More

specifically, Plaintiff alleges that Experian supplied several third parties with Plaintiff's consumer report without a permissible purpose to do so, and without reasonable procedures in place to assume that the credit inquiries were for a proper use and a lawful purpose.   Experian is a consumer reporting agency as defined by 15. U.S.C. § 1681a(f).   Experian essentially functions as a storehouse of credit information concerning hundreds of millions of consumers nationwide, collecting and storing credit information originated by others. Experian does not generate credit information itself, nor does it make loans, decide who should receive credit, or set loan terms.   Further, Plaintiff does not dispute that Experian accurately reported her information, as all information provided by Experian to third parties regarding Plaintiff was true.   Rather, Plaintiff disputes the validity of her auto loan signed with other third parties, which is unrelated to Experian.

Experian maintains and follows reasonable procedures to ensure that inquiries from third parties are for proper use and for a lawful purpose.   At all times, Experian acted in good faith and without malice or intent to injure Plaintiff, and did not act negligently or willfully.   Therefore, Experian has no liability in this case.   As a result, Plaintiff's requests for actual, statutory, and/or punitive damages are improper.

Experian further denies it was the proximate cause of any damages alleged by Plaintiff.   Experian is informed and believes that any alleged damages to Plaintiff were caused by the actions of Plaintiff herself and/or others.   Experian also is informed and believes that Plaintiff has failed to mitigate her alleged damages.   However, the facts supporting alleged damages and causation will need to be obtained through discovery from Plaintiff and/or third parties. Experian submits this statement based on the facts known to it at this time without waiving any defenses and reserves the right to supplement this statement once discovery begins and additional facts are developed.

Experian asserts its affirmative defenses as follows:

First, Plaintiff's claims fail to the extent that the Complaint, and each cause of action thereof, fails to set forth facts sufficient to state a claim upon which relief may be granted against Experian and fails to state facts sufficient to entitle Plaintiff to the relief sought, or to any other relief whatsoever from Experian.

Second, Plaintiff's claims fail to the extent that they are barred because all information Experian communicated to any third person regarding Plaintiff was true.

Third, Plaintiff's claims fail to the extent that, at all relevant times with respect to Plaintiff, Experian acted in good faith and complied fully with the FCRA and relevant state laws.

Fourth, Plaintiff's claims fail to the extent that Plaintiff's purported damages were the direct and proximate result of the conduct of Plaintiff or others.

Fifth, Plaintiff's claim for punitive damages fails to the extent that the Complaint fails to state a claim for relief for punitive damages. Additionally, Experian states that punitive damages violate its constitutional rights under the Constitution of the United States of America and the Constitution of Arizona.

Sixth, Plaintiff's claims fail to the extent that they are barred by the applicable statutes of limitation, including but not limited to 15 U.S.C. § 1681p or by the doctrine of laches.

Seventh, Plaintiff's claims fail to the extent that Plaintiff's purported damages, which Experian continues to deny, were the results of acts or omissions of third persons over whom Experian had neither control nor responsibility.

Eighth, Experian is informed and believes and thereon alleges that any alleged damages sustained by Plaintiff were, at least in part, caused by the actions of Plaintiff herself and/or third parties and resulted from Plaintiff's or third parties' own negligence which equaled or exceeded any alleged negligence or wrongdoing by Experian.

Ninth, any damages which Plaintiff may have suffered, which Experian continues to deny, were the direct and proximate result of the conduct of Plaintiff.  Therefore, Plaintiff is estopped and barred from recovery of any damages.

Tenth, Experian reserves the right to assert additional affirmative defenses at such time and to such extent as warranted by discovery and the factual developments in this case.

Eleventh, Plaintiff has failed to mitigate her damages.

**Trans Union's statement of the case:**   Trans Union is a Consumer Reporting Agency as defined by the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq*.  Pursuant to § 1681b(a)(3)(A), consumer reporting agencies may furnish consumer reports to persons which they have reason to believe intend to use the information in connection with a credit transaction involving the consumer on

whom the information is to be furnished and involving the extension of credit to the consumer.  Trans Union furnished Plaintiff's consumer report to Desert Toyota on December 5, 2017, and Plaintiff's Complaint pleads facts establishing that Trans Union had a permissible purpose to do so.

Plaintiff went to Desert Toyota with the intent to test drive a vehicle that she was interested in purchasing.  Plaintiff provided Desert Toyota with her driver's license and social security number knowing that Desert Toyota would access her consumer report so that it could determine the finance terms it would offer Plaintiff for credit to purchase the vehicle.  Desert Toyota then made the inquiry to Trans Union.  At the time the inquiry was made, Desert Toyota certified to Trans Union that it had a permissible purpose to access Plaintiff's consumer report; specifically, Desert Toyota certified that it was accessing Plaintiff's consumer report for the purpose of a "credit transaction."  By Plaintiff's own admissions, Desert Toyota did in fact access Plaintiff's consumer report for the purpose of a credit transaction.

When an inquiry is established to have been made with a permissible purpose, Plaintiff cannot maintain an action based upon a claim that the credit reporting agency failed to maintain reasonable procedures to avoid furnishing consumer reports without a permissible purpose in violation of § 1681e(a). Notwithstanding this, Trans Union did maintain the reasonable procedures set

forth in § 1681e(a); namely, Trans Union required the end user of the information- Desert Toyota- to identify itself and certify that the information sought would be used for a permissible purpose and no other.  Trans Union did not believe, nor were there reasonable grounds to believe, that Desert Toyota would not use Plaintiff's consumer report for a permissible purpose.

Further, the harm complained of by Plaintiff allegedly occurred as the result of Desert Toyota providing false information to potential lenders on a credit application which Trans Union had no part in.   These steps allegedly taken by Desert Toyota are completely unrelated to Trans Union furnishing Plaintiff's consumer report to Desert Toyota, thus Plaintiff lacks any causal connection between her alleged damages and any action or inaction of Trans Union.

Trans Union disagrees wholly with Plaintiff's recitation of the elements of § 1681e(a).  To establish a credit reporting agency's liability under § 1681e(a), Plaintiff must first prove that a consumer report was furnished without a permissible purpose in violation of 1681b. *See* Pintos v. Pac. Creditors Ass'n, 605 F.3d 665, 676 (9th Cir. 2010).  If Plaintiff can prove that a consumer report was furnished without a permissible purpose, the elements of 1681e(a) are contained in the statute itself: whether the consumer reporting agency maintained procedures requiring prospective users of the information to identify

themselves, certify the purposes for which the information is sought, and certify that the information will be used for no other purpose.  The statute also requires that consumer reporting agencies not furnish consumer reports if it has reasonable grounds for believing that the consumer report will not be used for a permissible purpose.

(4)     FCRA 15 U.S.C. 1681b(f): Plaintiff's position: Plaintiff must only prove that she did not provide permission for Defendants to obtain her consumer reports.  *Traveler v. Glenn Jones Ford Lincoln Mercury,* 2006 WL 173687, at *5 (D. Ariz. Jan. 14, 2006).

Trans Union's position:  To prove a violation of FCRA Section 1681b(f), plaintiff must show that credit information was obtained for an impermissible purpose.  *See* Salmas v. Portfolio Recovery Associates, LLC, SACV 13-0575-DOC, 2013 WL 6182614, at *2 (C.D. Cal. Nov. 25, 2013).  Section 1681b sets forth the permissible purposes for obtaining credit information.  The Ninth Circuit has identified two requirements for the permissible purpose in § 1681b(a)(3)(A): (1) a credit transaction involving the consumer; and (2) the collection of an account of the consumer.  Baron v. Kirkorsky, CV-17-01118-PHX-DGC, 2017 WL 4573614, at *1 (D. Ariz. Oct. 13, 2017).  A § 1681b(a)(3)(A) 'credit transaction' is a transaction in which the consumer directly participates and voluntarily seeks

credit.  Pintos v. Pacific Creditors Association (Pintos I), 504 F.3d 798-99 (9th Cir. 2007).

(5)     Arizona Consumer Fraud Act: ARS §§ 44-1521 et seq.:  the Plaintiff must show that Desert Toyota (1) made a misrepresentation in violation of the ACT; (2) Desert Toyota's conduct proximately caused Plaintiff's damages. *Cheatham v. ADT Corp.*, 161 F.Supp.3d 815 (D.AZ. Feb. 11, 2016).   A misrepresentation does not have to be an affirmative misstatement, but must cause injury to a Plaintiff who actually relies on the misrepresentation (unlike common law fraud that requires reasonable reliance).  *Id.*

(6)     Cross-claimant TruWest's burden of proof to prevail on its claims.

(1) Indemnity, Defense, and Contribution: To prove its right to contractual indemnity, TruWest must show Desert Toyota has a legal obligation to pay a sum or a sum is paid by TruWest for which Desert Toyota should make reimbursement.  *Aramark Sports & Entertainment Servs. Inc. v. Twin Anchors Marine Ltd.*, 2015 WL 1778325, *4 (D. Ariz. April 20, 2015).

**Affirmative Defenses:**

Trans Union:

14

a.  At all relevant times, Trans Union maintained and followed reasonable procedures to avoid violations of the FCRA and assure maximum possible accuracy of the information concerning Plaintiff in preparing consumer reports related to Plaintiff:

  i.  Trans Union may supply a consumer report to persons having a legitimate need for the information, including in connection with a business transaction that is initiated by the consumer, or to review an account to determine whether the consumer continues to meet the terms of the account.  15 U.S.C. § 1681b(a)(3)(F).

  ii.  Trans Union maintains and follows procedures which ensure Trans Union only furnishes consumer reports to persons with a permissible purpose or in accordance with the consumer's written instructions, in compliance with 15 U.S.C. § 1681b.

b.  Any alleged damages to Plaintiff, which Trans Union continues to deny, are the result of the acts or omissions of Plaintiff or others, over whom Trans Union has no control and for whom Trans Union has

no responsibility: Trans Union at all times complied with its obligations under the FCRA.  To the extent Plaintiff suffered any harm, it was due to Plaintiff's own lack of diligence in her credit related problems. Further, the co-defendant(s) in this case may have caused or contributed to Plaintiff's alleged harm.

c.     Any alleged damages to Plaintiff, which Trans Union continues to deny, were caused in whole or in part by an intervening or superseding cause.

**Desert Toyota's statement of the case:**

Plaintiff presented to Defendant Desert Toyota, an automobile dealer, on December 5, 2017 in order to purchase a 2007 Toyota Tundra she had previously expressed interest in buying. Plaintiff claims that Desert Toyota violated the Equal Credit Reporting Opportunity Act (ECOA), 15 U.S.C. § 1691 (c), the Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681 et seq., and the Arizona Consumer Fraud Act, A.R.S. § 44-1521 et seq. in regards to the sale of the Toyota Tundra.

Desert Toyota denies violating any of these statutes. Desert Toyota did not employ any marital-status discrimination against Plaintiff in violation of the

ECOA because Regulation B, 1002.5(c)(2) allows inquiry into an applicant's marital status when the applicant resides in a community property state, such as Arizona. Desert Toyota also did not violate the FCRA because Desert Toyota obtained Plaintiff's consumer report for an authorized purpose, namely to facilitate Plaintiff's purchase of the Toyota Tundra.  Desert Toyota also denies violating the Arizona Consumer Fraud Act because Desert Toyota and its employees did not forge Plaintiff's information and signature.

Desert Toyota is basing this statement only on facts known to Desert Toyota at this time. Desert Toyota does not waive any of its defenses and reserves the right to supplement as this case and facts develop. Desert Toyota does not allege any damages at this time but reserves the right to do so.

Desert Toyota:

(2) ECOA 15 U.S.C. § 1691(a)

Desert Toyota denies that it took any adverse action against Plaintiff on the basis of her marital status or sex. Under 12 C.F.R. § 1002.5(c)(2)(iv), Desert Toyota was permitted to inquire into Plaintiff's marital status because Plaintiff resides in Arizona, a community property state. 12 C.F.R. § 1002.5. Desert Toyota further alleges that it did not take any adverse action against Plaintiff. *See* 12 C.F.R. § 1002.2 (defining adverse action to not

include a change in the terms of an account expressly agreed to by an applicant). Desert Toyota alleges that Plaintiff expressly agreed to a change in terms when she signed the second retail installment contract containing the new terms.

(4) FCRA 15 U.S.C. § 1681b(f)

Desert Toyota alleges that Plaintiff provided permission for Desert Toyota to obtain her consumer reports. Permissible purposes for obtaining a consumer report, as outlined 15 U.S.C. §1681b(a), include: when the information is to be used in connection with a credit transaction involving the consumer and extension of credit to a consumer; and when there is a legitimate business need for the information in connection with a business transaction initiated by the consumer. 15 U.S.C. §1681b(a). Desert Toyota had a permissible purpose for obtaining Plaintiff's consumer report because it was related to the extension of credit to Plaintiff for her purchase of the Toyota Tundra. Desert Toyota also had a permissible purpose because Plaintiff initiated the transaction by expressing interest in purchasing the 2007 Toyota Tundra thereby creating a legitimate business need for Plaintiff's consume report.

(5) Arizona Consumer Fraud Act: ARS §§ 44-1521 et seq:

Desert Toyota denies that it made any misrepresentations regarding Plaintiff in connection with the sale of the 2007 Toyota Tundra. Desert Toyota also denies falsifying any of Plaintiff's information and also denies falsifying Plaintiff's signature. Desert Toyota alleges that Plaintiff did not suffer any damages.

**TruWest Credit Union's statement of the case:**

TruWest was unaware of and was uninvolved in, what Plaintiff classifies in her Complaint as the "First RISC", an alleged sales contract between her and Defendant DT Automotive Center, Inc. dba Desert Toyota Automotive Services ("Desert Toyota"), wherein Desert Toyota extended Plaintiff credit at an annual percentage rate of 5.5%, a down payment of $2,000, a finance charge of $4,464.19, and a total sale price of $28,022.36. On December 8, 2017, TruWest received a copy of a credit application, which was dated December 5, 2017. That same day, TruWest inquired into Plaintiff's credit to determine whether it wished to purchase the loan documents from Desert Toyota. TruWest opted to do so. On December 9, 2017 TruWest received a copy of the Retail Installment Sales Contract which included terms of a 7.19% APR and a $3,000 down payment, which was also dated December 5, 2017 (the "Sales Contract").      Plaintiff filled out and executed a membership application with TruWest, the Account &

Services Application, and on December 11, 2017, TruWest opened a membership account for Plaintiff. The membership account is dated December 5, 2017, because this was the date affixed on the Sales Contract executed by Plaintiff and Desert Toyota.

Days later, on December 14, 2017, Ms. Talia Jackson, a sales representative from TruWest, reached out to Plaintiff in order to discuss other financial services TruWest offers. It was not until after December 14, 2017 that Plaintiff made TruWest aware of her allegations regarding the information contained in the Desert Toyota credit application.

Plaintiff remains a member of TruWest and continues to make payments pursuant to the Sales Contract.

TruWest's above actions do not violate the ECOA. TruWest took no adverse action in which it was required to send an adverse notice. Further, as the assignee of the loan documents, TruWest is only considered a creditor under the ECOA if it knew or had reasonable notice of the alleged violations of the ECOA before it became involved in the transaction, or if it participated in the decision to extend credit. TruWest neither had such notice, nor did it participate in the decision to extend credit to Plaintiff. TruWest fully complied with the ECOA.

TruWest's above actions do not violate the FCRA. TruWest received a credit application and a Sales Contract from Desert Toyota. The receipt of such documents led to TruWest's reasonable belief that Plaintiff and Desert Toyota had engaged in a business/loan transaction, and TruWest inquired into Plaintiff's credit to assess whether it should purchase Desert Toyota's loan to Plaintiff. TruWest did so pursuant to its general certification with Experian. TruWest fully complied with the FCRA.

TruWest incorporates by reference the affirmative defenses stated in its Answer. The majority of those defenses go to Plaintiff's burden of proof:

- TruWest, as the assignee of the Sales Contract between Plaintiff and Desert Toyota is not considered a "creditor" under the ECOA because it did not participate in the decision to extend, renew, or continue the credit. *See Grady v. F.D.I.C.*, 2014 WL 1364932 *6 (D. Ariz. March 26, 2014) (holding that plaintiff failed to demonstrate that a defendant was a creditor because it did not show defendant "participated in the instant credit decision").

- TruWest, as the assignee, is not considered a creditor because it did not know or lacked reasonable notice of the alleged ECOA violation before it became involved in the credit transaction. 12 C.F.R. § 1002.2(l).

21

- TruWest did not take an adverse action. An adverse action includes "a change in the terms of an existing credit arrangement, or a refusal to grant credit in substantially the amount or on substantially the terms requested." 15 U.S.C § 1691(d). TruWest had no "existing credit arrangement" with Plaintiff to which it changed the terms, nor did it refuse to grant credit in substantially the amount or terms requested.

- TruWest lawfully inquired into Plaintiff's credit through its general certification with Experian and pursuant to its reasonable belief that Plaintiff had engaged in a business transaction with Desert Toyota. 15 U.S.C 1681b(a); 1681b(f)(2); 1681e(a); *Breese v. TRIADvantage Credit Servs., Inc.*, 393 F.Supp.2d 819, 823 (D. Minn. 2005).

This case is in the early stages of discovery. TruWest expressly reserves the right to assert affirmative defenses reserved in its Answer.

**America First Credit Union's statement of the case:** This matter involves the Plaintiff financing an automobile purchase from DT Automotive Center d/b/a Desert Toyota of Tucson. In December of 2017, Plaintiff went to purchase a vehicle from Desert Toyota. In the process of purchasing the subject vehicle, Plaintiff required financing. As part of that process Plaintiff signed a Credit Application "authorizing financial institutions to obtain consumer credit

reports and to gather employment history as necessary and appropriate to determine [Plaintiff]'s creditworthiness."

On December 8, 2017, America First received a request to provide financing to the Plaintiff. America First obtained a Credit Report and determined Plaintiff qualified for financing. America First approved the request and was willing to fund the loan being requested. The terms offered by America First was a loan in the principal amount of $18,258.17 plus $800 in GAP insurance for a total of $19,058.17 at 10.64% over seven years. America First did not receive a response to its loan offer and the offer expired.

At no time relevant herein, did America First have any information regarding Plaintiff's gender and/or marital status and took no discriminatory action with regard to Plaintiff in its consideration of the request for financing. *See Equal Credit Opportunity Act*, 15 U.S.C. § 1691, *et seq.* America First did not take any adverse action against Plaintiff in response to an application of credit and did not fail to provide any required notices or notifications of its actions to Plaintiff under the law. *See Fair Credit Reporting Act*, 15 U.S.C. § 1681, *et seq.* America First was informed and reasonably relied that the application and forms by Plaintiff had been properly signed and complied with all federal, state and local laws and regulations. America First has complied with and performed

23

all of its legal and other duties, statutory and regulatory, express and implied, to Plaintiff.

With regards to the claim for punitive damages, something more than conduct which establishes the tort is required for an award of punitive damages. *Bradshaw v. State Farm Mut. Auto. Ins. Co.*, 157 Ariz. 411, 521-22, 758 P.2d 1313, 1323-24 (1988); *Rawlings v. Apodaca,* 151 Ariz. 149, 161, 726 P.2d 565, 578 (1986); *Filasky v. Preferred Risk Mut. Ins. Co.,* 152 Ariz. 591, 598, 734 P.2d 76, 83 (1987). To recover punitive damages, Plaintiff must show that America First engaged in "reprehensible conduct <u>combined with</u> an evil mind over and above that required for commission of a tort."  *See Linthicum v. Nationwide Life Ins. Co.*, 150 Ariz. 326, 332, 723 P.2d 675, 681 (1986) (emphasis added).  The evil mind required for punitive damages can be found only if Plaintiff establishes that America First committed outrageous conduct: (1) with the intent to cause injury, (2) that was motivated by spite or ill will, or (3) to serve its own interests, consciously disregarding a substantial risk of significant harm to others. *Bradshaw,* 151 Ariz. at 422, 758 P.2d at 1324; *Linthicum,* 150 Ariz. at 332, 723 P.2d at 681.  Plaintiffs have the burden of establishing punitive damages by clear and convincing evidence.  *Linthicum*, 150 Ariz. at 332, 723 P.2d at 681.

Plaintiff cannot establish, by clear and convincing evidence, America First acted with conduct of an "evil mind" required to allow for an award for punitive damages.

**Tucson Federal Credit Union's statement of the case:** Tucson Federal Credit Union denies the allegations in the Complaint and in Plaintiff's statement of the case. Tucson Federal participates in an Indirect Lending Program in which

Tucson Federal has the option to purchase certain promissory notes, other instruments, and documents from the dealerships, which offer, among other products and services, automobiles. Tucson Federal uses a software program created, maintained, revised, and upgraded by Credit Union Direct Lending ("CUDL Software") through the Indirect Lending Program. Dealerships use the CUDL Software to communicate and submit applications to Tucson Federal. Tucson Federal then has the sole and absolute discretion to purchase the promissory notes, other instruments, and documents based on the information it receives through the CUDL Software.

According to the Complaint, Plaintiff provided information about her income, marital status, monthly mortgage payment amount, residence, and recent vehicle purchase to Desert Toyota to purchase a 2007 Toyota Tundra with financing pursuant to a Retail Installment Contract. Tucson Federal was not aware of or involved in this transaction. In December 2017, Desert Toyota transmitted an electronic credit application to Tucson Federal through the CUDL Software for an indirect used vehicle loan. Tucson Federal declined to purchase the indirect used vehicle loan and informed Desert Toyota. Tucson Federal did not base its decision on Plaintiff's sex or marital status. Tucson Federal based its decision not to purchase the indirect used vehicle loan on the

information it received and had no reason to believe that the information was false. Tucson Federal has now been wrongfully sued for violations of the FCRA and ECOA. The elements of proof necessary for each count of the Complaint and each affirmative defense, including a list of the elements of proof necessary when the burden shifts. Plaintiff's burden of proof to prevail on her claims:

(1)   ECOA 15 U.S.C. § 1691(d), Plaintiff must prove: (1) TruWest, America First, and Tucson Federal are creditors, (2) Plaintiff is a credit applicant, (3) creditors took adverse action with respect to Plaintiff's credit application, and (4) the creditors failed to provide Plaintiff with an ECOA-compliant statement of reasons for its adverse action. *Stoyanovich v. Fine Art Capital, LLC*, No. 06 Civ. 13158, 2007 WL 2363656, at *2 (S.D.N.Y. Aug. 17, 2007) (citing *Madrigal v. Kline Oldsmobile, Inc.,* 423 F.3d 819, 822 (8th Cir.2005). There is no serious dispute about any of the facts: no creditor supplied the Plaintiff with an ECOA compliant adverse action notice.

When a creditor takes action on a credit application, it has essentially two choices to make: whether to grant the credit in the terms requested or not to grant the credit in the terms requested. If the creditor grants the credit in the terms requested, there is no obligation under the ECOA to provide a notice. If the creditor denies or even if it approves less favorable terms, it is considered

an adverse action, for which the ECOA and the implementing regulations require an adverse action notice to be sent to the consumer within 30 days. *Schlegel v. Wells Fargo Bank, N.A.*, 720 F.3d 1204, 1209 (9th Cir. 2013)(holding that when a "creditor takes an adverse action against an applicant without giving the required notice, the applicant may sue for a violation of ECOA.").  The content of the adverse action notice is governed by the ECOA and Regulation B. 15 U.S.C. § 1691(d); 12 C.F.R. Part 1002.9.  Each creditor failed to provide Plaintiff with an adverse action notice with the content mandated by the ECOA.  As a result of the failure to provide her with an adverse action notice, she lacked the information she was entitled to have in order to fulfill the dual purposes of the statute – to fulfill the educational requirement and to ensure that the adverse actions was not a result of unlawful discrimination.  *Id.*

(2)  ECOA 15 U.S.C. 1691(a):  the ECOA outlaws credit discrimination on the basis of sex or marital status.  *Miller v. American Express Co.*, 688 F.2d 1235 (9th Cir. 1982); accord *Brothers v. First Leasing*, 724 F.2d 789 (9th Cir. 1984).  In order to prove that she was subject to an adverse action on the basis of marital status or sex, it is unnecessary to show that Desert Toyota intended to discriminate against her.  She must show that (1) Desert Toyota took adverse action against her, (2) on the basis of her marital status or sex.  *Id.*  Desert Toyota did not provide Plaintiff with an adverse action notice, therefore she is entitled

to recover under 1691(d):  Plaintiff must prove: (1) Desert Toyota is a creditor, (2) Plaintiff is a credit applicant, (3) creditor took adverse action with respect to Plaintiff's credit application, and (4) the creditor failed to provide Plaintiff with an ECOA-compliant statement of reasons for its adverse action. *Stoyanovich v. Fine Art Capital, LLC,* No. 06 Civ. 13158, 2007 WL 2363656, at *2 (S.D.N.Y. Aug. 17, 2007) (citing *Madrigal v. Kline Oldsmobile, Inc.,*423 F.3d 819, 822 (8th Cir.2005).

(3)     FCRA 15 U.S.C. § 1681e(a), Plaintiff's position: Plaintiff must only prove that she did not provide permission for Defendants to supply her consumer report to any users.  Subsumed therein are basic elements that will be largely uncontested: (1) Experian and Trans Union are consumer reporting agencies as defined by the Fair Credit Reporting Act, 15 U.S.C. 1681a(f); (2) Experian and Trans Union sold to third parties consumer reports as defined by the Fair Credit Reporting Act, 15 U.S.C. 1681a(d); (3) TruWest, Desert Toyota, America First, and Tucson Federal, are "creditors" and "users" of consumer reports.  The following elements are likely to be disputed: (4) Experian and TransUnion published Plaintiff's consumer reports to the creditors/users without a permissible purpose to do so; (5) even if the users of Experian and Trans Union received a certification from the creditors/users, it was not entitled to rely on such certification when there was indicia that Plaintiff had not authorized the pull, including that CRAS devote no resources to ensuring that

they have permission to provide the report and that the application falsely indicated that she was married and misrepresented her income; *Centuori v. Experian Info. Sols. Inc.*, 431 F.Supp. 2d 1002 (D. Ariz. 2006); *Pintos v. Pacific Creditors Ass'n*, 605 F.3d 665 (9th Cir. 2010)(blanket certification doesn't absolve CRAs of responsibility to ensure user has a permissible purpose) (6) violations were willful under 15 U.S.C. 1681n, *Safeco Inc. Co. of Am. v. Burr*, 551 U.S. 47 (2007), *Syed v. M-I, LLC*, 853 F.3d 492, 503 (9th Cir. 2017) (quoting *Safeco*, 551 U.S. at 56–57), and Ninth Circuit's Model Civil Jury Instruction 5.5; (7) Experian and Trans Union violations were negligent under 15 U.S.C. 1681o; (8) the Plaintiff suffered an injury in fact as a result of the Defendants' violations of the FCRA, *Syed*, 853 F.3d at 499-500; (9) damages, §§ 1681n & 1681o.

Tucson Federal does not agree with all the statements of the elements and proof outlined by Plaintiff above. Plaintiff alleges that Tucson Federal violated the Fair Credit Reporting Act ("FCRA") by "fail[ing] to provide a lawful certification that [it] was entitled to obtain and/or utilize [Plaintiff's] consumer report". Compl. at ¶ 122, ECF No. 1. The FCRA provides that a person shall not use or obtain a credit report for any purpose unless (1) the consumer report is obtained for a purpose for which the consumer report is authorized to be furnished under the FCRA; and (2) the purpose is certified by a prospective user of the report through a general or specific certification. 15 U.S.C. § 1681b(f).

Such procedures require that prospective users of the information and consumer report identify themselves, certify the purposes for which the information is sought, and certify that the information will not be used for another purpose. 15 U.S.C. § 1681e(a). Plaintiff has the burden of proof of these elements and others.

Tucson Federal certified and used the consumer report in connection with a potential credit transaction involving the extension of credit to Plaintiff in response to Desert Toyota's electronic credit application. That is a permissible purpose to obtain and use a consumer report under the FCRA. 15 U.S.C. § 1681b(a). Before obtaining the consumer report, Plaintiff acknowledged that financial institutions, such as Tucson Federal, would be obtaining a copy of her consumer report by signing Credit Application, dated December 5, 2017, which states as follows:

> You (1) make the above representations, which are certified correct, for the purpose of securing credit; (2) authorize us, affiliated entities, and financial institutions to whom we submit your application (hereinafter "Financial Institutions") to obtain consumer credit reports and to gather employment history as necessary and appropriate to determine your creditworthiness; (3) understand that we or the Financial Institutions will retain this application whether or not it is approved, and that it is your responsibility to update changes of name, address or employment.

The Credit Application further states, "You are notified pursuant to the Fair Credit Reporting Act, that your application may be submitted to the financial

institutions named below or to other Financial Institutions." As a result, Plaintiff cannot show that Tucson Federal lacked a permissible purpose or failed to certify that it had a permissible purpose when it obtained and used Plaintiff's consumer report.

Plaintiff also alleges that Tucson Federal violated the Equal Credit Opportunity Act ("ECOA") by failing "to provide a lawful adverse action notice with an adequate, truthful, primary or specific statement of reasons for taking adverse action." 15 U.S.C. § 1691(d). The ECOA generally requires users taking adverse actions on the basis of information contained in consumer reports to provide notice of the adverse action to the consumer. 15 U.S.C. § 1681m(a). A denial of credit is an "adverse action" under the ECOA. 15 U.S.C. § 1691(d)(6); 12 C.F.R. § 202.2(c). The ECOA provides special circumstances for applications submitted through a third party. When a third party submits an application to more than one creditor on behalf of the applicant and the applicant expressly accepts or uses credit offered by one of the creditors, the other creditors are not required to provide notice of the actions they took. 12 C.F.R. § 1002.9(g). The ECOA also provides that if no credit is offered or if the applicant does not accept or use the credit offered, each creditor must provide notice directly *or* through a third party, such as, Desert Toyota. *Id.*

Here, it appears that Defendant TruWest Credit Union extended credit to Plaintiff for the purchase of the vehicle. Compl. at ¶¶ 101-110, ECF No. 1. According to the Complaint, Plaintiff accepted the extension of credit by signing a retail installment contract with Desert Toyota, with an annual percentage rate of 7.1%, $3,000.00 down payment, $5,624.27 finance charge, and total sale price of $29,032.44. Compl. at ¶ 104. Under the ECOA, Tucson Federal was not required to provide notice of its actions because Plaintiff was offered and accepted credit from one of the creditors.

To avoid waiver and because Tucson Federal has not begun any discovery and does not have knowledge of all the facts and information known by the other parties, Tucson Federal asserts the following separate and affirmative defenses, some or all of which may ultimately be supported by the facts to be revealed in discovery and investigations of this case.

A.     Tucson Federal alleges that Plaintiff's claim may not have been commenced within the applicable statute of limitations and therefore the claims may be barred. The FCRA imposes a two-year statute of limitations commencing from the date of the violation of the FCRA. 15 U.S.C. § 1681p.

B.     Tucson Federal alleges that Plaintiff failed to state claims upon which relief may be granted pursuant to Rule 12, Fed. R. Civ. P.

C.     Tucson Federal alleges that Plaintiff's claims are barred by the doctrines of waiver, estoppel, and/or laches. A party asserting the waiver defense bears the burden of establishing that the other party's intent to relinquish a known right. Estoppel prevents the relitigation of an issue actually litigated and determined in a prior suit, regardless of whether it was based on the same cause of action as the second suit. *See, e.g., Kordsiemon v. Christianson*, 735 P.2d 827, 829 (App. 1986). Laches is an equitable defense that prevents a plaintiff who with full knowledge of the facts, acquiesces in a transaction and "sleeps upon his rights." *See Danjaq LLC v. Sony Corp.*, 263 F.3d 942, 950-51 (9th Cir. 2001). A defendant must prove both an unreasonable delay by the plaintiff and prejudice to itself. *Couveau v. Am. Airlines, Inc.*, 218 F.3d 1078, 1083 (9th Cir. 2000).

D.     Tucson Federal alleges that Plaintiff failed to mitigate her damages. Tucson Federal bears the burden to prove that Plaintiff failed to mitigate her alleged damages. *See, e.g., Equal Employment Opportunity Commission v. High Speed Enter., Inc.*, 833 F. Supp. 2d 1162 (D. Ariz. 2011).

E.     Tucson Federal alleges that Plaintiff's claims are barred because Tucson Federal breached no duty or obligation to Plaintiff.

F.     Tucson Federal alleges that Plaintiff is barred from recovery against Tucson Federal because there is no causal connection between any conduct of

Tucson Federal and any alleged damages that Plaintiff contends she sustained.

G.     Tucson Federal alleges that Plaintiff's claims are barred because her damages, if any, are the result of an intervening, superseding cause or causes leading to those alleged damages and, therefore, any action or inaction on the part of Tucson Federal was not the proximate cause of the alleged damages.

H.     Tucson Federal alleges that Plaintiff's claims are barred because the damages, if any, sustained by her, resulted from her own actions or inactions, or the actions or inactions of a third party/parties, and therefore Tucson Federal was not the proximate or substantial cause of the alleged damages.

I.     For its affirmative defense, Tucson Federal alleges that Plaintiff's claims are barred because Tucson Federal was under no obligation to provide an adverse action notice to Plaintiff pursuant to 12 C.F.R. §1002.9(g).

J.     For its affirmative defense, Tucson Federal alleges that Plaintiff's claims are barred because there was no consumer report within the meaning of 15 U.S.C. § 1681b(f). The statute defines a consumer report as "any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for (1) credit or insurance to be used

34

primarily for personal, family, or household purposes, or (2) employment purposes, or (3) other purposes authorized under section 604." 15 U.S.C. § 1681a(d).

K.      Tucson Federal alleges that Plaintiff's claims are barred because she cannot show that Tucson Federal used or obtained a consumer report without a permissible statutory purpose. The FCRA provides that a person shall not use or obtain a credit report for any purpose unless (1) the consumer report is obtained for a purpose for which the consumer report is authorized to be furnished under the FCRA; and (2) the purpose is certified by a prospective user of the report through a general or specific certification. 15 U.S.C. § 1681b(f). A consumer reporting agency may furnish a consumer report to a person whom the agency has reason to believe "intends to use the information in connection with a credit transaction involving the consumer on whom the information is to be furnished and involving the extension of credit to . . . the consumer." 15 U.S.C. § 1681b(a)(3)(A).

L.      Tucson Federal alleges that Plaintiff is at fault for her own alleged damages and/or others are at fault for Plaintiff's alleged damages such that the comparative fault of Plaintiff and/or others eliminates and/or reduces the alleged fault of Tucson Federal to zero. The liability of each defendant is several only and is not joint. Each defendant is liable only for the amount of damages

allocated to that defendant in direct proportion to that defendant's percentage of fault. A.R.S. § 12-2506(A). The trier of fact determines and apportions the relative degrees of fault. A.R.S. § 12-2506(C).

Tucson Federal includes the following affirmative defenses so as not to waive them and does not anticipate that all of the following affirmative defenses will be applicable. As information is discovered and discovery is ongoing, Tucson Federal will expand upon the following affirmative defenses, as necessary. Discovery may reveal facts that support the separate defenses in Rule 8, Fed. R. Civ. P. Therefore, Tucson Federal reserves the following defenses and alleges the Complaint is or may be barred, in whole or in part, and the alleged damages may be reduced in whole or in part by the doctrines of accord and satisfaction, arbitration and award, assumption of risk, contributory negligence, duress, estoppel, failure of consideration, fraud, illegality, in equitable conduct, laches, license, payment, release, res judicata, statute of frauds, statute of limitations, waiver, and any other matter constituting an avoidance or affirmative defense.

2.    **The Factual and Legal Issues Genuinely in Dispute:**

A. Whether Experian sold third party users a consumer report about the Plaintiff without a permissible purpose to do so.

B. Whether Trans Union sold third party users a consumer report about the Plaintiff without a permissible purpose to do so.

C. Whether Experian dedicated sufficient resources to ensure that it was not relying on a blanket certification.

D. Whether Experian maintains and follows reasonable procedures to ensure that inquiries from third parties are for proper use and for a lawful purpose.

E. Whether TransUnion dedicated sufficient resources to ensure that it was not relying on a blanket certification.

F. Whether Experian's violations of the FCRA were willful or negligent.

G. Whether TransUnion's violations of the FCRA were willful or negligent.

H. The amount of statutory, actual, and punitive damages the Plaintiff is entitled to recover against TransUnion and Experian.

I. Whether Plaintiff suffered any damages as a result of any alleged action or inaction of the Defendants.

J.   Whether TruWest, Desert Toyota, America First, and Tucson Federal are liable for $10,000 in punitive damages for failure to supply an ECOA-compliant adverse action notice to the Plaintiff by determining the amount of actual damages, the frequency and persistence of failures of compliance by the creditors, the resources of each creditor, the number of persons adversely affected, and the extent to which the non-compliance was intentional.

K.   Whether Desert Toyota took adverse action against Plaintiff based on her sex or marital status.

L.   Whether Desert Toyotas misrepresentations were the proximate cause of Plaintiff's damages.

M.   The amount of damages.

N.   Whether Non-CRA Defendants' actions were willful.

O.   Whether Non-CRA Defendants treated other consumers consistently to how they treated Plaintiff.

P.   Tucson Federal does not agree with all the alleged issues stated above.   All issues of law and fact related to Tucson Federal are at issue at this time.   This includes but is not limited to, whether Plaintiff can prove each element

necessary to show liability of Tucson Federal for alleged violations of ECOA and FCRA, causation, damages and whether Tucson Federal has acted and has been shown to act in such a way that punitive damages are appropriate, all of which Tucson Federal denies.  The affirmative defense raised by Tucson Federal are at issue and Tucson Federal can put "whether" in front of each affirmative defense but in an effort to save space will not do so unless requested by the Court.

Q. Whether TruWest, as an assignee of the loan, is a "creditor" under the ECOA.

R. Whether there was an "adverse action" taken by Defendants TruWest, America First, and Tucson Federal credit unions.

S. Whether Defendants TruWest, America First, and Tucson Federal had a reasonable belief that there was a permissible purpose to inquire into Plaintiff's credit.

**3.**     Federal Question jurisdiction exists pursuant to 28 U.S.C. § 1337 and 15 U.S.C. § 1681p.

**4.**     All known parties are joined and have answered.

**5.**     There are no known parties that are not subject to the court's jurisdiction.

**6.**     Dispositive and partially dispositive issues that may be decided by pre-trial motions: (1) whether the Plaintiff's consumer report was supplied to creditor/users for a permissible purpose; (2) whether the Defendants' procedures were reasonable; (3) whether the Defendants' allocated sufficient resources to the protection of consumers from invasion of their privacy through impermissible pulls of their consumer reports; (5) whether Defendants' conduct was willful; (6) whether Plaintiff suffered damages attributable to the Defendants, and (7) other dispositive motions determined to be appropriate pursuant to Fed. R. Civ. P. 56.

Tucson Federal Credit Union does not agree that all the issues listed by Plaintiff may be decided by dispositive or partially dispositive motions. Factual issues will prevent many of the issues from being determined by dispositive motions. Whether the specific ECOA and FCRA defenses raised by Tucson Federal, which may actually be the burden of Plaintiff or shift to Plaintiff, may be capable of being decided as a matter of law. Additionally, the inappropriate basis for punitive damages may be decided as a matter of law by a dispositive motion.

TruWest believes the following issues may be resolved by dispositive or partially dispositive motions: (1) whether TruWest is considered a "creditor"

under the ECOA; (2) whether TruWest took an adverse action which required notice; (3) whether TruWest had a reasonable belief that there was a permissible purpose to inquire into Plaintiff's credit report.

7.   **Summary Judgment.**   The Plaintiff anticipates that she will move for partial summary judgment or summary judgment on the following issues:  (1) whether the Defendants' had a permissible purpose to obtain/sell Plaintiff's consumer report; (2) whether the Plaintiff's consumer report was supplied to creditor/users for a permissible purpose; (3) whether the Defendants' procedures were reasonable; (4) whether the Defendants' allocated sufficient resources to the protection of consumers from invasion of their privacy through impermissible pulls of their consumer reports; (5) whether Defendants' conduct was willful; (6) whether Plaintiff suffered damages attributable to the Defendants; (7) whether Defendants made misrepresentations to the Plaintiff upon which she relied.

Trans Union intends to move for summary judgment on all claims asserted against it.  Trans Union may also move for judgment on the pleadings.

Tucson Federal Credit does not agree that the issues above stated by Plaintiff can be resolved by motion for summary judgment.  Tucson Federal

anticipates filing a motion for summary judgment and takes the position that an abbreviated briefing schedule is not appropriate at this time.

Desert Toyota may file a Motion for Summary Judgment or Partial Motion for Summary Judgment on the following issues: (1) that Desert Toyota's inquiry into Plaintiff's marital status was allowed under 12 C.F.R. § 1002.5(c)(2)(iv); (2) that Desert Toyota requested Plaintiff's consumer report for a permissible purpose; (3) that Desert Toyota did not make any misrepresentations to Plaintiff; and (4) that Plaintiff did not suffer any damages attributable to Desert Toyota.

TruWest anticipates filing motions for summary judgment on the following issues: (1) whether TruWest had a reasonable belief that there was a permissible purpose to inquire into Plaintiff's credit report; (2) whether TruWest took an adverse action which would require a statutorily required notice to Plaintiff; (3) whether TruWest is considered a creditor under the ECOA; (4) any other matters which are appropriate under Rule 56.

8.    **Referral.**   The parties do not believe that the case is appropriate for referral to arbitration or a United States Magistrate Judge for disposition of this case, nor is this case appropriate for retention of a Special Master.  However, the Parties believe that if this case is not resolved by informal

settlement discussions, referral to a United States Magistrate Judge for a settlement conference may be appropriate.  Tucson Federal agrees that a referral for settlement purposes to a Magistrate Judge may be appropriate. Tucson Federal also believes that private mediation may be appropriate.

**9.  Related Cases**. None.

**10. MIDP Responses:** MIDP responses have been served.

**11.   Suggested changes to the limitations on discovery**: No changes at this time.

**12.   Changes or limitations to the Federal Rules of Civil Procedure**. The parties intend to proceed under the Federal Rules of Civil Procedure without any changes or limitations.

**13.   Discovery.**  The Parties intend to engage in the following discovery to the extent that it is not provided in the Parties' MIDP responses or stipulated.  The Parties do not believe phased discovery is appropriate. Parties agreed to service all discovery requests electronically and such will be served to the following e-mail addresses:

**Plaintiff, Linnea Gashi Doberdoli:** Susan Rotkis, srotkis@clalegal.com, Christine A. Ferraris, cferraris@aferrarislaw.com

**Tucson Federal Credit Union:** David L. O'Daniel

dodaniel@grsm.com, Annelise Dominguez

adominguez@grsm.com, Sallie Bittner   sbittner@grsm.com,

Jahleel Garcia   jgarcia@grsm.com

**All counsel who have entered an appearance at the email addresses on the record.**

**Plaintiff's discovery:**  the Plaintiff intends to commence written discovery immediately by serving Requests for Production of Documents, Interrogatories, Requests for Admission, and taking depositions of Defendants fact witnesses designed to discover the information needed to prove the elements of Plaintiff's claim.  For example, Plaintiff will seek information contained in each Defendant's files about the Plaintiff, how the Defendants obtained the information about the Plaintiff, from whom, for how much, and what they did to ensure the Plaintiff had authorized the access to her consumer reports by the specific Defendants. The Plaintiff intends to discover Defendants' policies and procedures regarding the completion of credit applications, dealer-arranged financing, training and payment of its employees who perform such functions, the frequency within which subsequent Retail Installment Contracts are requested of consumers, the policies of each defendant based on marital

status or sex; collection, compilation and quality control of consumer reports; the resources allocated and due diligence performed by TransUnion and Experian to ensure that each of its subscribers were trustworthy when selling consumer reports to them; each Defendants policies and procedures regarding information required for completed applications and adverse action notice policies and procedures. Plaintiff intends to learn of the extent of Defendants' knowledge of and strategies to eliminate the practice of requesting second, subsequent RISCs with varying terms; to eliminate or reduce the invasion of consumer privacy by ensuring consumer reports are only obtained/supplied when authorized by the actual consumer. Plaintiff intends to take the deposition of Defendants' corporate designees as well as fact witnesses regarding the Plaintiff's file, report and disclosure, the development and implementation of the policies and procedures for procuring and selling consumer reports. Plaintiff intends to learn how the Plaintiff's marital status and sex effected Defendants' assessment of Plaintiff's credit worthiness. Plaintiff intends to learn the net worth of each Defendant and their ability to pay a punitive damages award. Plaintiff intends to learn how much money the Defendants make from collecting, compiling, and disbursing consumer reports, and whether and how their conduct toward the Plaintiff and consumers like her affected that income.

The Plaintiff also intends to conduct third-party discovery of the and furnishers that vendors that provided the information to the Defendants that they attributed to the Plaintiff.  The Plaintiff intends to take the depositions of the Defendants and third parties' corporate designees and fact witnesses by videoconference in order to conserve resources and reduce inconvenience on the parties, counsel and the witnesses. The Plaintiff intends to serve written discovery electronically and will request that the responses be provided in searchable, portable document format by email or Plaintiff's FTP.  Subpoenas to third parties will be narrowly tailored to minimize inconvenience on the third parties.

**Experian's Discovery:** Experian intends to conduct discovery including Requests for Admission, Requests for Production of Documents, Interrogatories and Depositions.  Experian anticipates that depositions will be conducted by videoconference to conserve resources and minimize inconvenience of witnesses. Experian intends to conduct discovery related to: Plaintiff's allegations in the complaint and Plaintiff's alleged damages.  Defendant may also seek discovery regarding the following or any other permissible topic under the Federal Rules of Civil Procedure, including: Plaintiff's communications with other defendants and Plaintiff's allegations against other

defendants that are relevant to Experian's defenses, the persons, entities or creditors who extended or denied Plaintiff credit; Plaintiff's credit applications, Plaintiff's credit history, the reasons Plaintiff was granted or denied credit, and any related communications or correspondence with Plaintiff.

**Trans Union's Discovery:**

    a. All matters involving and/or pertaining to Plaintiff's claims against Defendants, including, but not limited to, all documents and evidence relating to Plaintiff's claims.

    b. All matters which pertain in any way to Plaintiff's claimed damages generally, including, but not limited to, the factual basis and amounts sought as well as all documents and evidence relating to Plaintiff's damages.

    c. All matters involving witnesses with knowledge of Plaintiff's claims and damages.

    d. All communications between Plaintiff and any of the Defendants or representatives of the Defendants.

    e. All admissions by any of the Defendants or representatives of the Defendants.

    f. All matters involving Plaintiff's credit history and credit file, particularly, but not limited to, as related to the Plaintiff's claims and allegations in this case.

    g. All communications regarding the alleged credit inquiry in this case between the Plaintiff and any of the Defendants, representatives of the Defendants, or any other third parties, as well as between the Defendants, representatives of the Defendants, or any other third parties.

    h. Any and all information and documents held by any party to this case relative to any claim or defense made by any party.

Trans Union intends to depose Plaintiff and Plaintiff's fact witnesses, at a minimum.

**Desert Toyota's Discovery:**

Desert Toyota intends to conduct written discovery in the form of the following: Requests for Production of Documents; Interrogatories; and Requests for Admissions. Desert Toyota will also take the deposition of Plaintiff and any fact witnesses that are identified through discovery.

**TruWest Credit Union's Discovery:** TruWest anticipates it will participate in depositions of material fact witnesses, including but not limited to the Plaintiff and corporate designees of Defendants. TruWest may also serve requests for production of documents and things, non-uniform interrogatories, and requests for admissions on Plaintiff and Defendants.

This case is in its early stages. TruWest reserves the right to pursue further discovery as more facts become known.

**America First Credit Union's Discovery:** America First intends to propound written discovery including Requests for Production of Documents, Non-Uniform Interrogatories, Requests for Admission, and taking depositions of the parties, potentially fact witnesses, and any experts that any party designates. America First will conduct any necessary third-party discovery to defend the claims raised by Plaintiff.

**Tucson Federal's Discovery:** Tucson Federal intends to participate in all depositions taken while it is a party.   Tucson Federal intends to take the depositions of Plaintiff, the witnesses listed by Plaintiff and possibly third parties who are deemed to have relevant information.  Tucson Federal will send written discovery including interrogatories, request to produce and requests for admissions to Plaintiff and may serve third parties with subpoenas.  Tucson Federal anticipates deposing all experts, including but not limited to, handwriting experts and questioned documents experts.

At present, Tucson Federal anticipates deposing Plaintiff about the facts and allegations included in the Complaint and about information necessary to show the absence of the elements on the issues that are the Plaintiff's burden and about information necessary to prove its defenses.   Tucson Federal anticipates serving interrogatories requesting additional information on the claims and defenses.  Tucson Federal will use best efforts to avoid sending written discovery that duplicates the discovery by other Defendants except where necessary to ask similar questions related to Tucson Federal.  Tucson Federal reserves the right to alter its course of discovery as issues are raised and additional information becomes available. Experian intends to serve written

discovery electronically and will request that responses be provided in a searchable, portable document format by email or FTP.

14. **Privileged information and Work Product:** All parties agree that none are seeking privileged information and work product that arose solely as a result of this attorney client relationship in this case. Otherwise, any information about which a party knows is responsive under the MIDP shall be identified in a privilege log.  Any privileged or work product information about which a party knows is responsive to written discovery shall be identified in a privilege log and served at the time objections are due. TruWest has proposed a deadline of January 30, 2018 to produce its privilege log and wishes to discuss with the Court a protective order and proposed method for filing under seal, TruWest believes such measures will reduce the number of filings received by the Court as well as facilitate the protection and filing of confidential documents and reduce the attorneys' fee burden on the parties.

15. **Evidentiary Hearings:**  The parties reasonably anticipate that motions in limine, including a Daubert motion, will be filed and hearings on such motions will be necessary prior to trial.

16. **Date the Case will be Ready for Trial:** The case should be ready for trial not later than January 14, 2020.  Early stipulations and/or rulings

on summary judgment will narrow the issues to be tried.   A three-day trial is requested. Tucson Federal believes that a six-day trial will be necessary depending on the number of Defendants who participate in the trial.

**17.**   **Jury Trial:** All parties agree that a jury trial has properly been requested and no one disputes that it is proper.

**18.**   **Prospects for Settlement:**  this case represents a familiar FCRA and consumer fraud fact pattern with experienced counsel representing the parties.  All counsel discussed the prospect of early settlement.  Should counsel be unable to resolve the matter informally, the assistance of a magistrate judge will aid the parties in arriving at a just compromise.  Plaintiff specifically requests the presence of each party's representative with authority at any settlement conference or mediation.

**19.**   **Class Actions:**  at this time, this case is not pled as a class action.

**20.**   Complexity requiring special case management: at this time, the case is appropriate for placement on a complex track due to the number of parties and volume of discovery anticipated.

**21.**   Other matters aiding in just, expeditious, and efficient resolution:

**22.**   **Proposed Deadlines:**

**(a) Additional parties or amended pleadings:**

Tucson Federal believes that adding parties and amending pleadings can normally be done relatively early.  In this case, Tucson Federal submits that the issues require a longer deadline than normal and some discovery will be necessary before such determinations can be made.  Tucson Federal suggests that the deadline for adding parties or filing amendments to pleadings be 90 days from the submission of this Rule 26f Report which is approximately April 11, 2019.

(b) **Discovery:**  October 11, 2019

(c) **Filing deadline settlement status reports:** July 18, 2019

(d) **Filing deadline dispositive motions**: November 11, 2019

(e) **Disclosure of expert testimony under Rule 26(a)(2)(c):**

(f) **Areas of expert testimony:** April 15, 2019

(g) **Expert Disclosures:** Plaintiff May 1, 2019

(h) **Defendants Expert Disclosures:** June 30, 2019

(i) **Rebuttal Expert Disclosures:**   July 30, 2019

(j) **Joint Proposed Pretrial Order:** December 11, 2019

Respectfully,

*/s/ Christine Anderson Ferraris*
Christine Anderson Ferraris, AZ Bar 031414
A. Ferraris Law, PLLC
333 N. Wilmot Rd., Suite 340
Tucson, Arizona 85711
Tel. (520) 268-1289
cferraris@aferrarislaw.com

*/s/ Susan M. Rotkis*
Susan M. Rotkis, AZ Bar 032866
Consumer Litigation Associates West, PLLC
382 S. Convent
Tucson, Arizona 85716
Tel. (520) 622-2481
srotkis@clalegal.com
Attorneys for Plaintiff

*/s/ Benjamin John Branson*
Benjamin John Branson
Cavanagh Law Firm PA
1850 N. Central Ave.
Sutie 2400
Phoenix, AZ 85716
bbranson@cavanaghlaw.com
Attorneys for American First Credit Union

*Awaiting Signature Authority for:*

Christopher Kyutaek Heo
Jones Skelton & Hochuli, PLC
40 N. Central Ave. Suite 2700
Phoenix, AZ 85004
cheo@jshfirm.com
Attorneys for DT Automotive Center, Inc.

Andrew Scott Lishko

May Potenza Baran & Gillespie P.C.
201 N. Central Ave. Suite 2210
Phoenix, AZ 85004
alishko@maypotenza.com
Attorneys for TruWest Credit Union


David O'Daniel
Gordon & Rees LLP
111 W. Monroe St. Suite 1600
Phoenix, AZ 85003
dodaniel@gordonrees.com
Attorneys for Tucson Federal Credit Union

John Neil Stuart
Cohen Dowd Quigley PC
2425 E. Camelback Rd. Suite 1100
Phoenix, AZ 85016
nstuart@cdqlaw.com
Attorneys for TransUnion LLC


**CERTIFICATE OF SERVICE**

The Rule 26(f) report was filed this 11th day of January 2019 using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

Christopher Kyutaek Heo
Jones Skelton & Hochuli, PLC
40 N. Central Ave. Suite 2700
Phoenix, AZ 85004
cheo@jshfirm.com


Benjamin John Branson
Cavanagh Law Firm PA
1850 N. Central Ave.
Sutie 2400

Phoenix, AZ 85716
bbranson@cavanaghlaw.com
Attorneys for American First Credit Union

Christopher Kyutaek Heo
Jones Skelton & Hochuli, PLC
40 N. Central Ave. Suite 2700
Phoenix, AZ 85004
cheo@jshfirm.com
Attorneys for DT Automotive Center, Inc.

Devin Sreecharana
Andrew Scott Lishko
May Potenza Baran & Gillespie P.C.
201 N. Central Ave. Suite 2210
Phoenix, AZ 85004
devin@maypotenza.com
alishko@maypotenza.com
Attorneys for TruWest Credit Union

Timothy R. Hyland
Cavanagh Law Firm PA
1850 N. Central Ave.
Sutie 2400
Phoenix, AZ 85716
thyland@cavanaghlaw.com
Attorneys for American First Credit Union

David O'Daniel
Gordon & Rees LLP
111 W. Monroe St. Suite 1600
Phoenix, AZ 85003
dodaniel@gordonrees.com
Attorneys for Tucson Federal Credit Union

Daniel P. Quigley
John Neil Stuart
Cohen Dowd Quigley PC
2425 E. Camelback Rd. Suite 1100

Phoenix, AZ 85016
dquigley@cdqlaw.com
nstuart@cdqlaw.com
Attorneys for TransUnion LLC


*/s/ Susan M. Rotkis*
Susan M. Rotkis, AZ Bar 032866
Consumer Litigation Associates West, PLLC
382 S. Convent Ave.
Tucson, Arizona 85716
Tel. (520) 622-2481
srotkis@clalegal.com